[No. B132155. Second Dist., Div. One. June 29, 2000.]

ECC CONSTRUCTION, INC., Plaintiff and Appellant, v.
CHARLES GANSON et al., Defendants and Respondents.

COUNSEL

Lang, Hanigan & Carvalho, John D. Lang, John A. Carvalho and Aaron B. Booth for Plaintiff and Appellant.

Hunt, Ortmann, Blasco, Palffy & Rossell and Jerome D. Meier for Defendants and Respondents.

OPINION

**MASTERSON, J.**—The Oak Park Calabasas condominium complex was damaged in the 1994 Northridge earthquake. The homeowners' association executed a contract with plaintiff ECC Construction, Inc., to repair the common areas and the individual units. None of the homeowners were signatories to the contract. A dispute arose as to the amount due ECC Construction under the contract.

In July 1995, ECC Construction filed this action against the association and the homeowners (approximately 300 in number), seeking to recover over $2 million allegedly due under the contract.[1] The complaint alleged causes of action against all defendants for breach of contract, fraud, foreclosure of

---

[1] Of the 300 homeowners, ECC Construction served approximately 148. The summary judgment motion was filed on behalf of 147 owners; we use "homeowners" to refer to them.

mechanic's lien, recovery for reasonable value of services rendered, and wrongful retention of proceeds (Civ. Code, § 3260).[2]

The homeowners moved for summary judgment on the ground that they were not parties to the contract. The trial court granted the motion, leaving the association as the sole defendant. ECC Construction has appealed. We affirm.

## DISCUSSION

Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

■ " 'A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . ■ In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed.' . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true." (*A-H Plating, Inc. v. American National Fire Ins. Co.* (1997) 57 Cal.App.4th 427, 433 [67 Cal.Rptr.2d 113]-434, citations omitted.)

The homeowners association is a California nonprofit mutual benefit corporation. (See Corp. Code, § 7110 et seq.) "Such corporations are formed principally for the mutual benefit of their members . . . ." (Comments on Legis. Com. Summary, Deering's Ann. Corp. Code (1994 ed.) foll. § 7110, p. 207.) "A member of [such] a corporation is not, as such, personally liable

---

[2] Section 3260 provides in part: "The retention proceeds withheld from any payment by the owner from the original contractor, or by the original contractor from any subcontractor, shall be subject to this section. [¶] . . . Within 45 days after the date of completion [of the construction], the retention withheld by the owner shall be released." (Civ. Code, § 3260, subds. (b), (c).)

for the debts, liabilities, or obligations of the corporation." (Corp. Code, § 7350, subd. (a).) ██ "Members of mutual benefit corporations, like shareholders, have no personal liability for the debts of the corporation except to the extent the alter ego doctrine applies or they owe money to the corporation." (Comments on Legis. Com. Summary, Deering's Ann. Corp. Code, *supra*, foll. § 7350, p. 272.)

As one court has explained: "A nonprofit corporation, like a business corporation, has all the powers of a natural person in carrying out its activities. (Corp. Code, § 7140.) These powers specifically include the power to enter into contracts. (Corp. Code, § 7140, subd. (i).) A contract in the corporate name 'binds the corporation, and the corporation acquires rights thereunder whether the contract is executed or wholly or in part executory.' (Corp. Code, § 7141, subd. (b).) Correspondingly, a member of a nonprofit corporation 'is not, as such, personally liable for the debts, liabilities, or obligations of the corporation.' (Corp. Code, § 7350, subd. (a).)" (*Gantman v. United Pacific Ins Co.* (1991) 232 Cal.App.3d 1560, 1567 [284 Cal.Rptr. 188].)

ECC Construction's claims against the individual homeowners were not based on an alter ego theory or a debt they owed the association. As a result, the Corporations Code bars suit against them. The owners were not parties to the construction contract, and they are not liable for the association's debts or liabilities.

Nevertheless, ECC Construction argues that the homeowners may be personally liable where the association acts as their agent or for their benefit. Not so. By definition, the association acts for the benefit of the owners. (See Comments on Legis. Com. Summary, Deering's Ann. Corp. Code, *supra*, foll. § 7110, p. 207.) The association may also act as their agent. Thus, under ECC Construction's scenario, the owners would always be liable for the association's debts and liabilities, and the immunity granted the owners by the Corporations Code would be rendered meaningless—a result we are not willing to accept. (See *Wells Fargo Bank v. Goldzband* (1997) 53 Cal.App.4th 596, 617 [61 Cal.Rptr.2d 826].)

In sum, the Corporations Code contemplates that third parties such as ECC Construction will recover damages, if at all, from the association. In turn, the association will look to its members, if necessary, to pay its debts. Accordingly, the homeowners are not liable to ECC Construction for any wrongful conduct related to the payments due under the construction contract.

■ Our discussion is not yet at an end. ECC Construction filed a mechanic's lien against the homeowners. The second cause of action is based on ECC Construction's attempt to foreclose on the lien.

By statute, the amount of the lien is the lesser of (1) the price agreed upon by the claimant and the contracting party, and (2) the reasonable value of the labor, services, equipment, or materials furnished. (Civ. Code, § 3123, subd. (a).)[3] Here, there was no "agreed price" or contract between ECC Construction and the individual homeowners. Consequently, as to each owner, ECC Construction would be entitled to the reasonable value of its work on that owner's unit, plus the owner's share of the cost to repair the common areas.

Further, "[t]he owner of any condominium may remove his or her condominium from a lien against two or more condominiums or any part thereof by payment to the holder of the lien of the fraction of the total sum secured by the lien which is attributable to his or her condominium." (Civ. Code, § 1369.) Again, there must be a determination of the amount of the lien as to each owner. (See 8 Miller & Starr, Cal. Real Estate (2d ed. 1990) Mechanics' Liens, § 26:46, p. 515.)

ECC Construction's lien, as filed with the county recorder, did not segregate the amount by owner. Instead, it stated the total sum allegedly due under the construction contract ($2,376,743).

ECC Construction repeatedly indicated throughout the litigation that it would not or could not place a value on the work as to each owner. By way of example, in seeking a protective order, ECC Construction stated that it "has never broken down the reasonable value of the work done to each unit; nor will ECC do so at the trial of this matter." When asked in interrogatories to indicate the reasonable value of the labor and materials as to each unit, ECC Construction responded that it "presently cannot make this determination . . . ." A supplemental interrogatory served six months later resulted in the same response. And in opposing summary judgment, ECC Construction submitted a declaration from one of its attorneys, who stated: "ECC has not completed gathering evidence concerning the reasonable value of labor, materials and services rendered to each individual condominium unit."

In its separate statement, ECC Construction cited several exhibits that allegedly indicated the amount of the lien per owner. Our review of the

---

[3]In the event the contract is breached, the lien may not exceed the reasonable value of the labor, services, equipment, and materials furnished by the claimant. (Civ. Code, § 3123, subd. (b).)

exhibits proves otherwise. The separate statement referred to data provided by two owners, Terry Root and Jan Reinglass, showing the value of the repairs to their condominiums ($15,047.14 and $4,600, respectively). However, ECC Construction did not do any work on those units. Both owners contracted with someone *other than* ECC Construction to make the repairs, and both paid for the work with their own funds. Plainly, the work performed by *another* contractor on only two units tells us nothing about the value of ECC Construction's work on the remaining units. Further, the figures for Root and Reinglass indicate that the repair costs per unit could vary significantly. Thus, the costs per owner could not be calculated by simply dividing the total amount of the lien by the total number of units.

As ECC Construction correctly points out, this case involves a "blanket" mechanic's lien, e.g., a lien against an entire condominium complex, including the individual units, which does not allocate the amount of the lien per homeowner. Blanket liens are permitted by law. (See Civ. Code, § 3130; 8 Miller & Starr, *supra*, Mechanics' Liens, § 26:46, p. 515.)

However, in the context of condominium ownership, where a blanket lien has been filed, the contractor must still notify each owner of the "fraction of the total sum secured by the lien which is attributable to his or her condominium." (Civ. Code, § 1369.) That information is statutorily required so that "[t]he owner of any condominium may remove his or her condominium from a lien . . . by [making] payment to the holder of the lien [of his or her fractional share]." (*Ibid.*)

In the present case, the enforceability of the lien was raised and resolved by way of summary judgment. The evidence established that, as of the time of the summary judgment motion, ECC Construction had not apportioned the lien per owner. By failing to do so, it lost the ability to enforce the lien against the individual homeowners.

In short, ECC Construction failed to establish a disputed issue of fact with respect to the amount of the lien as to each owner. It follows that the trial court properly ruled in favor of the owners on the claim to enforce the mechanic's lien.[4]

---

[4]Because we find that ECC Construction did not apportion the lien among the homeowners, we do not reach the owners' alternative arguments that the lien was unenforceable, e.g., ECC Construction had to pursue the lien against all 300 owners (not just the 148 who were parties to the action), and the company failed to establish that the labor and materials represented by the lien were actually used on the Oak Park Calabasas condominium project.

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied July 21, 2000, and on July 21, 2000, and July 24, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 18, 2000.